# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | DAVID H. COAR | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 4729 | DATE | AUG 1 9, 2002 |
| CASE TITLE | Kevin Aalders (IDOC # A-90409) v. Asst. Deputy Director Roth, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter memorandum opinion and order. Plaintiff's motion for leave to file in forma pauperis [3-1] is granted. The trust fund officer at plaintiff's current place of incarceration shall deduct $4.29 from plaintiff's account for payment to the clerk of court and make installment payments as directed. The clerk shall send a copy of this order to the trust fund officer at Menard Correctional Center. This action is dismissed for failure to state a claim upon which relief may be granted, terminating case. Plaintiff's motion for appointment of counsel [4-1] is denied as moot.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 2 8 2002 | |
| X | Docketing to mail notices. | | date docketed | 9 |
| X | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| KS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEVIN AALDERS, )
)
    Plaintiff, )
)
    v. )
)
)
ASST. DEPUTY DIRECTOR ROTH, et al. )
)
    Defendants. )

No. 02 C 4729

Judge David H. Coar

DOCKETED

AUG 2 3 2002

## MEMORANDUM OPINION AND ORDER

Kevin Aalders, a prisoner in the custody of the Illinois Department of Corrections, filed this *pro se* civil rights action against correctional officials at Joliet Correctional Center. Aalders is granted leave to proceed without prepayment of the filing fee, but, as required by the Prison Litigation Reform Act, he will be required to pay the fee in installments.[1]

Under 28 U.S.C. § 1915A, the court is required to review complaints filed by prisoners against governmental officers or employees, and dismiss any portion of the complaint it finds frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. In determining whether the complaint states a claim upon which relief may be granted, the court applies the standard employed in deciding a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., taking all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000).

Aalders has filed a long, rambling complaint with numerous exhibits. In addition to the complaint with its attached exhibits filed July 2, 2002, an additional set of exhibits and a statement entitled "Notification of Witnesses" was filed on July 30, 2002. Because Aalders is proceeding

---

[1]    Pursuant to 28 U.S.C. § 1915(b)(1), Aalders is assessed an initial partial filing fee of $4.29. The trust fund officer at Aalders' current place of incarceration is ordered to collect, when funds exist, the partial filing fee from his trust fund account and pay it directly to the clerk of court. Thereafter the trust fund officer at the correctional facility where Aalders is confined is authorized to collect monthly payments from his trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments collected from plaintiff's trust fund account shall be forwarded to the clerk of court each time the amount in the account exceeds $10 until the full $150 filing fee is paid. All payments shall be sent to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, Il. 60604, attn: Fiscal Dept., and shall clearly identify Aalders and the case number assigned to this action.



*pro se*, the court considers all of these materials in determining whether Aalders can state a claim against the defendants. *See Gutierrez v. Peters*, 111 F.3d 1364, 1367 & n. 2 (7th Cir. 1997).

## PLAINTIFF'S ALLEGATIONS

On January 13, 2000, while incarcerated at Joliet Correctional Center, Aalders was charged with disciplinary rule violations by defendant David C. Freeman, an IDOC investigator, after informants allegedly claimed Aalders was recruiting inmates to kill a correctional staff member and take over a cellhouse. Aalders was immediately transferred to Pontiac Correctional Center where a hearing was held before the Pontiac Adjustment Committee on January 21, 2000. On January 27, 2000, James M. Schomig, the warden at Pontiac, approved the Committee's recommendation continuing the matter for investigation.

On that date a second hearing was held, also at Pontiac, this time before Joliet's Adjustment Committee consisting of defendants Coutee and Dantler. Aalders contends that Coutee and Dantler, who are both African-Americans, were prejudiced against him because he was accused of being a white supremacist. Coutee and Dantler found Aalders guilty and recommended as punishment loss of one year of good time credit, indeterminate confinement in segregation, one year demotion to "C" grade and six months' yard denial. The recommendation was approved by defendant James Chrans, then the warden of Joliet Correctional Center, on February 4, 2000, although Aalders remained at Pontiac.

Aalders appealed the decision to IDOC's Administrative Review Board (ARB). After a hearing on March 30, 2000, the ARB remanded the case to be rewritten in an order dated May 15, 2000. Eventually Aalders received a polygraph examination on July 3, 2000. On July 14, 2000, the polygraph examiner reported that Aalders had responded truthfully, but it was not until September 1, 2000, that IDOC Director Donald Snyder approved the ARB's recommendation that the disciplinary convictions be expunged. The ARB report indicated that because the revocation of Aalder's good-time credits had not been processed, nothing had to be done to undo that element

2

of Aalders' punishment.[2] Aalders was released from segregation on September 6, 2000, and transferred to Menard Correctional Center.

Aalders alleges that while he was in segregation at Pontiac he was denied medical care for an infection, he was not permitted to use the law library, and conditions in the segregation unit amounted to psychological torture. Aalders presumably includes these allegations to show his suffering from his wrongful confinement in segregation, rather than as separate claims, since Aalders does not name anyone from Pontiac Correctional Center as a defendant. The court accordingly understands that this suit solely relates to Aalders' disciplinary conviction. The court expresses no opinion as to whether Aalders has a claim against correctional officials at Pontiac for unconstitutional conditions of confinement there.

## ANALYSIS

The court understands Aalders' feeling of injustice, but his disciplinary conviction and confinement in segregation did not violate his constitutional rights. Although the Eighth Amendment forbids cruel and unusual punishment, segregation is in itself neither cruel nor unusual. The only constitutional right potentially at issue is Aalder's right not to be deprived of liberty without due process of law, guaranteed by the Due Process Clause of the Fourteenth Amendment.

A convicted prisoner is obviously not entitled to liberty before the expiration of his sentence. A prisoner may have "liberty interests" that may not be taken away without due process of law, but the Due Process Clause of the Fourteenth Amendment does not create a liberty interest either in avoiding transfer to another institution, *Meachum v. Fano*, 427 U.S. 215, 224 (1976), or in remaining in the general prison population, *Hewett v. Helms*, 459 U.S. 460 (1983).

The Supreme Court in *Hewitt* held that mandatory language in state laws or regulations can create a constitutionally enforceable liberty interest in avoiding segregation unless specified conditions are met. However, *Sandin v. Conner*, 515 U.S. 472 (1995), sharply limited such liberty interests, holding that an enforceable liberty interest can only exist in avoiding restraint that

---

[2] According to the exhibits, the loss of good-time credit ordered by the Adjustment committee was not processed, so the length of Aalders' incarceration is not affected. It appears from information publicly available on IDOC's website that Aalders is serving a life sentence.

"imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. The Court noted that because prisoners held in non-punitive administrative segregation and protective custody were confined under similar conditions, "[the plaintiff's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486.

Following *Sandin*, the Seventh Circuit has repeatedly held that disciplinary segregation does not create atypical and significant hardship -- in effect, that segregation, even arbitrarily imposed, *is* one of the "ordinary incidents of prison life" and not of constitutional concern. *See Walker v. O'Brien*, 216 F.3d 626, 630 n. 3 (7th Cir. 2000); *Thomas v. Ramos*, 130 F.3d 754, 762 (7th Cir. 1997); *Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997).[3/] Neither placing Aalders in disciplinary segregation nor delaying his release can support a federal constitutional claim.

Even if Aalders had a protected interest in not being confined in segregation without due process of law, according to the complaint he received it. Aalders received a hearing, and "[t]here is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." *Morisette v. Peters*, 45 F.3d 1119, 1121 (7th Cir. 1995).

The court accordingly dismisses the complaint for failure to state a claim upon which relief may be granted without prejudice to any state-law claims Aalders may be able to assert in his pending suit in the Illinois Court of Claims.

IT IS SO ORDERED.

DATED: 8/19/02

David H. Coar, Judge
United States District Court

---

[3/] The harshness of the Supreme Court's opinion in *Sandin* surprised judges, who were well aware that for most prisoners disciplinary segregation is not routine and represents a radical change in their conditions of confinement. *See Leslie v. Doyle*, 896 F.Supp. 771 (N.D. Ill. 1995)(Shadur, J.). Nevertheless, lower courts must follow it.